WIDENER, Circuit Judge:
 

 Petitioners, Diana R. Beard and others (Mrs. Beard), are all women who have filed claims in the Chapter 11 bankruptcy of A.H. Robins Company, Inc. (Robins). All of their claims relate to injuries they suffered from using the Daikon Shield, an interuterine contraceptive device manufactured by Robins. Mrs. Beard has filed two petitions with this court seeking writs of mandamus. In the first petition, Mrs. Beard asks this court to issue a writ of mandamus to United States District Judge Robert R. Merhige, Jr., directing him to disqualify himself pursuant to 28 U.S.C. § 455 from presiding over the Robins bankruptcy. In the second petition, Mrs. Beard asks this court to issue a writ of mandamus to United States District Judge Robert R. Merhige, Jr., directing him to provide for the verbatim stenographic recording of all proceedings in the Robins bankruptcy. We decline to issue either writ.
 

 I
 

 We first consider Mrs. Beard’s initial petition seeking the disqualification of Judge Merhige, a United States District Judge for the Eastern District of Virginia and stationed at Richmond. Richmond is also the corporate headquarters of Robins. As a result of the filing of a large number of personal injury claims regarding the Dai-kon Shield, Robins filed a petition under Chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 101, et seq., on August 21, 1985, at Richmond, in the Eastern District of Virginia.
 
 [1]
 
 Pursuant to 28 U.S.C. § 1334,
 
 *822
 
 Judge Merhige began to exercise jurisdiction over the Robins bankruptcy.
 
 [2]
 
 Mrs. Beard claims that Judge Merhige should be disqualified from taking any further action in the Robins bankruptcy because of certain actions taken by him both prior and subsequent to the filing of the Chapter 11 petition.
 

 To understand Mrs. Beard’s claims of disqualification on account of actions of Judge Merhige prior to the bankruptcy, a brief statement of the Daikon Shield litigation is necessary. Robins engaged in the manufacture and marketing of the Daikon Shield from 1971 to 1974. Production was discontinued in 1974 following widespread complaints regarding the device’s safety.
 
 A.H. Robins Co., Inc. v. Piccinin,
 
 788 F.2d 994 (4th Cir.1986). The first Daikon Shield product liability case filed at Richmond in the United States District Court for the Eastern District of Virginia was commenced in August 1976. By random selection, the case was assigned to Judge Mer-hige. From then on, all Daikon Shield cases filed in Richmond were assigned to Judge Merhige pursuant to that court’s operating procedure. By August 22, 1985, 399 Daikon Shield cases had been assigned to Judge Merhige. More than 200,000 claims have now been filed in the Chapter 11 case.
 

 In August 1984, a number of Daikon Shield cases were transferred from the United States District Court in Minnesota to Richmond in the Eastern District of Virginia. Those cases, as a matter of course, were also assigned to Judge Merhige. In October 1984, Robins moved, in the district court, to certify a nationwide class action on the issue of punitive damages. In November 1984, plaintiffs in the Minnesota cases, through counsel Joseph S. Fried-berg, Ronald I. Meshbesher, and John A. Cochrane, moved to consolidate those cases for punitive damage purposes only. (Messrs. Friedberg, Meshbesher and Coch-rane are sometimes referred to in the record as attorneys for the Minnesota plaintiffs or the Richmond plaintiffs.) Judge Merhige granted the consolidation motion for the punitive damage issue only.
 

 Robins’ class action was generally opposed by claimants’ attorneys, including those attorneys representing the Richmond plaintiffs. Attorneys Bradley Post of Wichita, Kansas, and Robert Manchester of Burlington, Vermont, on behalf of clients, filed motions to intervene in the Richmond cases for the limited purpose of opposing Robins’ motion to certify a punitive damage class.
 
 [3]
 
 Mr. Douglas Bragg entered an appearance as co-counsel in Mr. Post’s case. Mr. Thomas J. Brandi, of Denver, Colorado, opposed Robins’ motion before Judge Merhige but apparently filed no motion to intervene. Messrs. Manchester and Brandi served as co-lead counsel for claimants opposing Robins’ class action motion. Mr. Murray J. Janus served as local counsel. Messrs. Friedberg and Meshbesher served as co-lead counsel in these Virginia cases. Messrs. Post and Bragg, along with others, represent Mrs. Beard in the petitions now before this court.
 

 A hearing was held before Judge Mer-hige on July 18,1985. The Richmond plaintiffs were represented at the hearing by Messrs. Joseph Friedberg, Douglas Thomson and John Cochrane. Mr. Manchester was present on behalf of the intervenors. Mr. Alexander N. Slaughter appeared on
 
 *823
 
 behalf of Robins.
 
 [4]
 
 Judge Merhige advised the attorneys that he was organizing a meeting, on August 6, 1985, of state and federal judges who were handling Daikon Shield eases to solicit ideas for disposing of these personal injury cases. Judge Mer-hige sought comments from the attorneys present on that forthcoming meeting. Mr. Manchester commented that it would be helpful to know, among other things, certain financial information regarding Robins. Judge Merhige continued this discussion regarding Robins’ financial condition by noting that he heard that things were tight at Robins. Judge Merhige said that he did not want to get all the judges together for a meeting only to subsequently discover that Robins had filed a petition in bankruptcy. The judge requested Robins’ counsel to consider those thoughts. Robins’ attorney advised Judge Merhige that he would respond to the court’s inquiry before the scheduled August 6th meeting.
 

 Judge Merhige then expressed his belief that all of the Daikon Shield cases would end up in the district court in Richmond either because of class action status or because of a Robins bankruptcy petition. He invited the plaintiffs to seek out any judge they may want to come to Richmond and try those cases in place of him if they so wished.
 

 At that hearing, Judge Merhige announced that he planned to deny Robins’ class action motion. Counsel for plaintiffs, Mr. Priedberg, announced that he planned to file a motion for class certification and affirmative collateral estoppel.
 

 On July 22, 1985 another hearing was held and Judge Merhige entered an order denying Robins’ motion for a class action as to punitive damages. On August 2, 1985, plaintiffs, through counsel Mr. Fried-berg, filed a motion seeking a nationwide class action and affirmative collateral es-toppel.
 

 Following the July 22nd hearing and Judge Merhige’s inquiry of counsel regarding Robins’ financial condition, Robins’ counsel suggested that E.C. Robins, Jr., the company’s president, could provide Judge Merhige with the information he sought. Counsel for Robins asked that the meeting take place at a time that would minimize publicity. Judge Merhige then suggested that the meeting take place at his home. Counsel for the Richmond plaintiffs and the defendant Robins agreed to the meeting.
 
 [5]
 
 E.C. Robins, Sr. accompanied his son to Judge Merhige’s home on August 1, 1985, although he had not been expected to attend the meeting. Judge Merhige explained to the Robins that he had planned a meeting of judges to discuss the handling of the Daikon Shield cases and he did not want to meet if Robins planned to file a petition in bankruptcy. The Robins told Judge Merhige that the company considered reorganization under Chapter 11 to be a last resort that it hoped to avoid.
 

 Satisfied that no bankruptcy petition filing was imminent, Judge Merhige proceeded with his plans and on August 6, 1985 met with approximately 12 other judges in Wichita, Kansas. The judges exchanged information and ideas regarding the nationwide implications of the Daikon Shield litigation. Judge Merhige advised the group that Robins hoped to avoid a Chapter 11 petition. Neither counsel for Robins nor counsel for any of the claimants attended this meeting.
 

 On August 9, 1985, a hearing was held before Judge Merhige on the plaintiffs’ class action motion. No decision was made on the motion. The parties and the court discussed various aspects of the case, including the viability of a limited fund theory. Judge Merhige asked the plaintiffs’ counsel to consider whether punitive damages should remain in ■ these cases. He asked Robins’ counsel to consider admit
 
 *824
 
 ting that the Daikon Shield was defective and that as a result many women were injured. Plaintiffs were represented at the hearing by Mr. Friedberg. Mr. Janus was present as liaison counsel for plaintiffs. Messrs. Cogar, Slaughter, and Miller were present on Robins’ behalf. Mr. Manchester was also present at the hearing, noting that he was there on behalf of the inter-venors. Judge Merhige asked Mr. Manchester if he planned to file an intervention motion. Mr. Manchester answered that he was already properly before the court, and the matter was dropped.
 
 [6]
 

 Another hearing on the class action motion was scheduled for August 22, 1985. On August 21st, Robins filed its petition for Chapter 11 reorganization, thereby staying all proceedings then pending involving Robins. On that same day, Judge Merhige entered Administrative Order 1 (mentioned in n. 2 supra) and assumed jurisdiction over the bankruptcy.
 

 At the hearing on August 22nd, Judge Merhige announced that all of the pending Daikon Shield cases were stayed as a matter of law because of the Chapter 11 bankruptcy petition filed by Robins. Judge Merhige solicited comments from counsel. Mr. Manchester, who was present seeking a dismissal of the class action motion and the intervention of six claimants into the case, questioned Judge Merhige regarding certain ex parte meetings between the judge, the Robins, and Robins’ counsel. Judge Merhige responded that he had met with Mr. Robins Sr. and Mr. Robins, Jr. at the consent of all the parties to the 300 Richmond cases. Mr. Manchester objected to that statement by arguing that he represented an intervenor and had not consented to the meeting. Judge Merhige corrected him by recalling that the intervention filed in the Richmond cases by Messrs. Manchester, Post, Bragg and Brandi was limited to opposing Robins’ class action motion. When that motion was denied on July 22nd, the intervenors were no longer parties to the case.
 
 [7]
 

 Mr. Bragg then questioned Judge Mer-hige on the August 6th meeting of Daikon Shield judges. Judge Merhige answered all of counsel’s questions, stating in particular that he had not solicited the transfer of Daikon Shield cases to Richmond. Mr. Bragg then questioned Judge Merhige again about his meeting with E.C. Robins, Jr. and E.C. Robins, Sr. Judge Merhige again explained that the meeting was with the consent of counsel for all parties. Mr. Bragg then continued the questioning of Judge Merhige, alleging that Robins was a neighbor and “probably a social friend” of the judge. Judge Merhige responded that he would not say he was Robins’ social friend “any more than anybody else I know” but that Robins was “a neighbor” and “a fine man.” Judge Merhige ended the hearing by asking the parties to consider who should serve on a claimants’ committee in the Chapter 11 reorganization proceeding. He said that Mr. Friedberg’s group should be on the committee, and he would take suggestions from Mr. Manchester or anyone else.
 

 On August 22, 1985, the Richmond plaintiffs, through their counsel Mr. Friedberg, refiled their class action motion as an adversary proceeding in the bankruptcy. The Daikon Shield Claimants’ Committee (later appointed) opposed this action. Judge Mer-hige heard argument on the motion on November 9, 1985 and then took the motion under advisement.
 

 On September 25, 1985, United States Trustee William C. White appointed a Committee of Representatives of Daikon Shield Claimants (Claimants’ Committee). The committee was composed of thirty-eight attorneys representing Daikon Shield plaintiffs. Messrs. Bragg, Brandi, Manchester and Post, intervenors’ counsel in the Richmond Daikon Shield cases, were all appointed to the committee. Judge Merhige
 
 *825
 
 entered an order the following day allowing the Claimants’ Committee to retain the law firm of Cadwalader, Wickersham and Taft as counsel for the committee. Mr. Murray Drabkin signed that order on behalf of the law firm. The law firm of Little, Parsley and Cluverius was retained as local counsel, and Mr. Lawrence B. Cann, III, signed the order for the firm.
 

 The Claimants’ Committee conducted an organizational meeting at the end of September 1985, at which time Mr. Bradley Post was elected chairman of the committee and Mr. Douglas Bragg was elected vice-chairman.
 

 On November 9, 1985, another hearing took place before Judge Merhige to consider Robins’ motion to transfer all of the pending Daikon Shield cases throughout the country to the district court in Richmond since that court was presiding over the Robins reorganization. That motion was supported by the official creditors’ committee and opposed by the Claimants’ Committee. Judge Merhige granted the motion, requiring that all personal injury actions arising from the use of the Daikon Shield be transferred to Richmond in the United States District Court for the Eastern District of Virginia. With some modification not relevant here, this court affirmed that transfer order in
 
 Piccinin,
 
 supra.
 
 [8]
 

 At the conclusion of the November 9th hearing, Robins’ counsel noted to the court that the parties had agreed that an application for the allowance of administrative expenses to the law firm of McGuire, Woods and Battle
 
 [9]
 
 would be deferred. Judge Merhige agreed to the deferral and voluntarily noted for the record that Mr. Carle Davis of that firm had previously handled some legal work for him. Judge Merhige explained that Mr. Davis had prepared his will and several trusts for him but that he did not have Mr. Davis on retainer.
 
 [10]
 

 Hearings on the Robins reorganization continued to be held throughout the remainder of 1985 and into early 1986. Following one such hearing on February 14, 1986, Judge Merhige held attorney Sidney L. Matthew in civil contempt of court for continuing action in a civil proceeding in the United States District Court for the Southern District of Florida in violation of the automatic stay resulting from Robins’ bankruptcy petition. Upon a motion for reconsideration filed by Mr. Matthew through his counsel, the finding of contempt was vacated.
 

 Little progress was made in resolving the major issues present in the Robins bankruptcy. Judge Merhige continued to note his disappointment at the lack of progress being made and continued to encourage counsel to get to the issues at hand.
 

 By mid-February 1986, the Claimants’ Committee had grown dissatisfied with Mr. Drabkin of Cadwalader, Wickersham and Taft as its counsel and voted to seek his removal. The committee wished to hire Mr. Robert Rosenberg of the law firm of Latham and Watkins of New York as counsel for the committee. The committee notified Mr. Drabkin by telephone on February 19th of its decision and instructed him to take no further action as counsel in the Chapter 11 proceeding. Following that telephone call, Mr. Drabkin arranged a conference call with Judge Merhige, Bankruptcy Judge Shelley, U.S. Trustee White and local counsel to inform them of the committee’s decision and to seek advice on how to carry out procedurally the committee’s desires. Judge Merhige advised Mr. Drabkin to file a motion to withdraw as counsel for the Claimants’ Committee.
 
 [11]
 

 
 *826
 
 Concluding that the Claimants’ Committee had become unmanageable, United States Trustee White moved the court, on February 21, 1986, either to change the committee’s size and membership or to dissolve the committee. That motion to dissolve or change the membership of the committee and Mr. Drabkin’s motion to withdraw as counsel to the committee were both heard on March 4, 1986. The Claimants’ Committee sought to have Mr. Drab-kin removed as counsel and Mr. Rosenberg appointed as counsel for the committee before the court considered the motion to dissolve the committee. Judge Merhige refused on the ground that the committee itself had the right to choose its counsel and no one knew if the committee in its present form would survive the trustee’s motion. Judge Merhige did, however, allow Mr. Rosenberg to argue on behalf of the committee at the hearing but refused to appoint him counsel for the committee. After taking testimony regarding the division of philosophy
 
 [12]
 
 within the Claimants’ Committee and the resulting near paralysis of the committee, Judge Merhige concluded that the committee was unmanageable. He then dissolved the Claimants’ Committee. He told the trustee that he would entertain a motion for appointment of a new Claimants’ Committee to be composed of between three and seven people. That committee would be allowed to appoint its own counsel.
 

 These petitioners filed their motion to disqualify Judge Merhige on March 4,1986, a few minutes after he ordered that the Claimants’ Committee, of which petitioners’ counsel were members, be dissolved. On March 14, 1986, Judge Merhige denied the disqualification motion after filing a detailed opinion and speaking at length from the bench on the merits of the motion.
 

 On March 20, 1986, United States Trustee White appointed a new Claimants’ Committee composed of five people. None of petitioners’ counsel were appointed to the new Claimants’ Committee.
 
 Piccinin
 
 was decided by this court on April 10,1986. On April 14, 1986, petitioners sought a writ of mandamus from this court to require Judge Merhige to disqualify himself.
 

 While we do not relish the mention by name of so many attorneys involved in an unpleasant matter, clarity dictates such action here. The number of Daikon Shield claimants involved in the Robins bankruptcy is simply too large as a practical matter to refer to those claimants by their names and various positions on this mandamus petition. Messrs. Bragg and Post have filed the instant petition on behalf of their clients, who were limited intervenors in the Richmond Daikon Shield product liability actions.
 
 [13]
 
 The newly appointed Claimants’ Committee, through its local counsel Mr. Stanley K. Joynes, opposes the petition for the writ of mandamus. The Unsecured Creditors’ Committee, the Committee of Equity Security Holders and the United States have all filed papers opposing issuance of the writ.
 

 The granting of a writ of mandamus is a drastic remedy to be used only in extraordinary situations.
 
 Kerr v. United States,
 
 426 U.S. 394, 402, 96 S.Ct. 2119, 2123, 48 L.Ed.2d 725 (1976). A writ of mandamus will not issue when all that is shown is that the district court abused its discretion when making the challenged ruling.
 
 In re: Ralston Purina Co.,
 
 726 F.2d 1002, 1003 (4th Cir.1984). The party seeking mandamus relief carries the heavy burden of showing that he has “no other adequate means to attain the relief he desires” and that his right to such relief is “clear and indisputable.”
 
 Allied Chemical Corp. v. Daiflon, Inc.,
 
 449 U.S. 33, 35, 101 S.Ct. 188, 190, 66 L.Ed.2d 193 (1980), quoted in
 
 In re: Ralston Purina Co.
 
 at 1004;
 
 In re: International Business Machines Corp.,
 
 618 F.2d 923, 927 (2d Cir.1980).
 

 
 *827
 
 Courts are extremely reluctant to grant a writ of mandamus.
 
 In re: Ford Motor Co.,
 
 751 F.2d 274, 275 (8th Cir.1984). Such a decision is largely a matter of discretion with the court addressing the application for the writ.
 
 Kerr,
 
 supra, 426 U.S. at 403, 96 S.Ct. at 224.
 

 A district judge’s refusal to disqualify himself can be reviewed in this circuit by way of a petition for a writ of mandamus.
 
 In re: Rodgers,
 
 537 F.2d 1196 (4th Cir.1976).
 
 [14]
 

 A judge “shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.” 28 U.S.C. § 455(a).
 
 [15]
 
 Disqualification is required if a reasonable factual basis exists for doubting the judge’s impartiality.
 
 Rice v. McKenzie,
 
 581 F.2d 1114, 1116 (4th Cir.1978). The inquiry is whether a reasonable person would have a reasonable basis for questioning the judge’s impartiality, not whether the judge is in fact impartial. Id. at 1116.
 

 While there is little direct charge of personal bias here, it is worthwhile to recount the rules with respect to that question so far as they may bear on the matter at hand.
 

 The alleged bias must derive from an extra-judicial source. It must result in an opinion on the merits on a basis other than that learned by the judge from his participation in the matter.
 
 United States v. Grinnell Corp.,
 
 384 U.S. 563, 583, 86 S.Ct. 1698, 1710, 16 L.Ed.2d 778 (1966). The nature of the judge’s bias must be personal and not judicial.
 
 Shaw v. Martin,
 
 733 F.2d 304, 308 (4th Cir.1984). A judge is not disqualified because his familiarity with the facts of a case stem from his judicial conduct in presiding over earlier proceedings.
 
 United States v. Parker,
 
 742 F.2d 127 (4th Cir.1984).
 

 Because § 455 places a duty directly upon the judge to evaluate his own actions, it does not require that an affidavit be filed.
 
 United States v. Heldt,
 
 668 F.2d 1238, 1271 (D.C.Cir.1981); 13A Wright, Miller and Cooper,
 
 Fed’l Pract. & Proc.,
 
 § 3550 at 629. If an affidavit or motion is filed under § 455 seeking disqualification, the judge is not bound to accept those allegations as true.
 
 Phillips v. Joint Legislature Com., etc.,
 
 637 F.2d 1014, 1019, n. 6 (5th Cir.1981), cert. den. 456 U.S. 960, 971, 102 S.Ct. 2035, 2233, 72 L.Ed.2d 483, 845 (1982). The proper test to be applied is whether another with knowledge of all of the circumstances might reasonably question the judge’s impartiality.
 
 Rice,
 
 supra, p. 1116.
 

 While petitioners allege numerous acts by Judge Merhige from which they conclude that a reasonable person might question his impartiality under 28 U.S.C. § 455, they primarily rely upon five: (1) that Judge Merhige’s personal acquaintance with E.C. Robins, Sr. and his opinion that Mr. Robins is a “fine man” require his disqualification; (2) that Judge Merhige’s ex parte conversation with E.C. Robins, Sr. and Jr. requires his disqualification; (3) that Judge Merhige’s ex parte communications with counsel for Robins and the attorneys for the class action proponents require his disqualification; (4) that Judge Merhige’s financial and legal relationships to the Richmond lawyers representing the parties in this case.require his disqualification; and (5) that Judge Merhige has prejudged some of the issues in this case which requires his disqualification. We discuss each below.
 

 
 *828
 
 We find no merit to petitioners’ claim that Judge Merhige should be disqualified because he said that E.C. Robins, Sr. is a fine man. Petitioners argue that Judge Merhige’s decisions in the Robins bankruptcy will affect Mr. Robins personal financial fortune because E.C. Robins, Sr. and his family own 48% of the stock of A.H. Robins Company. Because of Judge Merhige’s sentiments regarding E.C. Robins, Sr.’s character and integrity, the argument goes, he will be unable to act impartially in adjudicating the Robins bankruptcy.
 

 We reject petitioners’ argument. First, it is well to recount what Judge Merhige said at the August 22nd hearing. On that day, after stating to intervenors’ attorneys, Messrs. Bragg and Manchester, that he did not consider E.C. Robins, Sr. to be a social friend “any more than anyone else I know,” Judge Merhige stated that Robins was “a neighbor” and “a fine man.” Such a general statement without more cannot be viewed reasonably as indicative of any bias or prejudice in favor of Mr. Robins.
 

 Petitioners rely upon
 
 Roberts v. Bailar,
 
 625 F.2d 125 (6th Cir.1980), to support their conclusion that the district judge should be disqualified. The plaintiffs in
 
 Roberts
 
 brought a Title VII sex discrimination claim alleging that because of her gender postal officials at a particular branch were preventing her promotion into management. Local Postmaster Graves was a named defendant and intimately connected with the personnel decisions of which plaintiff complained. At a pretrial hearing, the district judge stated that “I know Mr. Graves, and he is an honorable man and I know he would never intentionally discriminate against anybody.”
 
 Roberts
 
 at 127. The plaintiff unsuccessfully sought to re-cuse the judge because of the remark. Following a judgment for the postal defendants, plaintiffs appealed. The Court of Appeals ruled that the district judge erred when he refused to recuse himself, concluding that a reasonable person would question the impartiality of the district judge.
 

 Petitioners’ reliance upon
 
 Roberts
 
 is misplaced. In both
 
 Roberts
 
 and the case before us today, the district judge commented upon the character of an individual intimately tied to the defendants. The judge in
 
 Roberts
 
 went further, however, he stated that Graves would not intentionally discriminate against anyone. The district judge in
 
 Roberts
 
 thus commented upon the ultimate merits of the action before him, and a reasonable person would conclude that the judge had a personal bias in favor of the defendant regarding the merits of plaintiff’s claim for relief.
 

 Judge Merhige’s comment about Robins, Sr.’s character falls far short of the kind of remark made in
 
 Roberts
 
 that required disqualification of the district judge. Such general and qualified statements regarding an officer of a defendant company cannot reasonably be seen as resulting in an opinion on the ultimate merits of the litigation. There is no evidence in this record that Judge Merhige is a close friend of Mr. Robins or that such acquaintance as exists could be seen as affecting his judgment regarding the reorganization of the Robins Company. “Mere general allegations of intimacy of the judge with opponents” are insufficient to require recusal, we have held in a case involving personal bias.
 
 Morse v. Lewis,
 
 54 F.2d 1027, 1032 (4th Cir.1932). We think that Judge Merhige’s acquaintance with Robins, Sr. and his opinion of Robins as a fine man are not a reasonable basis for questioning the judge’s impartiality.
 

 Petitioners contend that Judge Merhige should have disqualified himself because of the conversation he had with Robins Sr. and Robins, Jr. with respect to the company’s plans to file its petition for protection under the bankruptcy laws. Petitioners rely upon Canon 3(A)(4) of the Code of Judicial Conduct which provides that a judge shall “neither initiate nor consider ex parte or other communications concerning a pending or impending proceeding.” Petitioners take the position that Judge Merhige’s meeting the two Robins in the product liability cases requires his dis
 
 *829
 
 qualification in this bankruptcy proceeding even though all of the parties to the product liability suits consented to the meeting.
 

 We disagree. Judge Merhige met with the two Robins only after all of the parties to the Daikon Shield cases then pending before the district court consented to the meeting. The meeting’s object was not upon the merits of the litigation, but only a limited inquiry into the chances that the company would file its petition in bankruptcy. These petitioners were not parties to the Daikon Shield cases when the meeting occurred. Their limited intervention in the case had ended, and successfully to them, we might add. They now seek disqualification because of action taken by the judge in a case in which they were no longer parties. Because the parties agreed to the action taken by Judge Merhige, we see no basis for disqualification. See
 
 Lazofsky v. Summerset Bus Co., Inc.,
 
 389 F.Supp. 1041, 1044 (E.D.N.Y.1975).
 

 We disagree with petitioners’ claim that the district court should have notified them of the meeting because of their interest in the case. As previously noted, petitioners were no longer parties to the pending cases. A judge is under no obligation to notify everyone who may be interested in the outcome of a case, but who is not a party, of every proceeding in the case or risk disqualification for failure so to notify. Since all of the parties to the pending Dai-kon Shield litigation in Richmond knew in advance the subject to be discussed at the meeting and all agreed to the meeting, the danger present in any ex parte communication was averted.
 
 [16]
 

 Petitioners next seek Judge Mer-hige’s disqualification because of ex parte communications he had with attorneys for Robins and the class action proponents. First, petitioners claim that Judge Merhige met with Mr. Friedberg, counsel for the plaintiffs, prior to June 27,1985, and Judge Merhige advised Mr. Friedberg that he planned to grant non-opt-out compensatory damages’ class status with offensive collateral estoppel.
 
 [17]
 
 The meeting occurred with the consent of counsel for Robins. During this time, the Daikon Shield actions were before Judge Merhige. The bankruptcy petition had not yet been filed.
 

 Petitioners complain because they were not advised of this conversation with counsel. Once again, petitioners cannot complain about such a conversation because they had intervened in the Daikon Shield litigation for a very-limited purpose, that of opposing Robins’ proposed punitive damages class. Had they wished to become a party to all aspects of the Daikon Shield action, they could have sought to intervene generally. They did not, but chose to seek only a limited intervention, which was successful. They cannot now complain about a conversation to which all parties in interest to the lawsuit consented. See
 
 Kirkland v. N. Y. State Dept. of Correc. Services,
 
 711 F.2d 1117, 1125 (2d Cir.1983);
 
 Bradley v. Milliken,
 
 620 F.2d 1141, 1143 (6th Cir.1980).
 

 Petitioners complain that Robins’ counsel met ex parte with Judge Merhige on the day the Chapter 11 petition was filed, seeking to have him enter Administrative Order 1. Initially, we disagree with petitioners’ conclusion that Administrative
 
 *830
 
 Order 1 represents an “unprecedented order.” It is no more than its name reveals, a procedural order to govern the administration of a complex Chapter 11 proceeding. It suspended parts of an internal operating order of the court that referred matters to the bankruptcy judge and instead retained those powers in the district court, powers specifically given that court by Congress. All Robins’ attorneys did at the meeting was to present a proposed order for the court’s consideration. Judge Merhige agreed with counsel’s belief that such an order was necessary, and thereupon entered the order. The action taken by the district court was completely appropriate and lawful. Even petitioners acknowledge that it was lawful for the district court to enter such an order. We find no grounds for disqualifying Judge Merhige for taking such action.
 

 Finally, petitioners complain about a telephone conversation of February 19, 1986 between Judge Merhige, Bankruptcy Judge Shelley, U.S. Trustee White, and attorneys Drabkin and Little. Mr. Drabkin initiated the call to advise the court that the Claimants’ Committee was seeking to remove him as their counsel. Mr. Drabkin sought suggestions on how to proceed properly to comply with the committee’s request.
 

 We do not think such a conversation should result in disqualification of Judge Merhige. While petitioners claim they did not authorize Mr. Drabkin to make such a call, there is no way the district court could have known that. Mr. Drabkin was still attorney of record for the committee. So far as the judge knew, Mr. Drabkin had the authority to conduct the conference call, and we see no error by the judge in speaking to the committee’s counsel. We know of no requirement, nor can there reasonably be one, that dictates that the trial judge must clear with the clients every contact with an attorney to ensure that the attorney is not overstepping his bounds of representation.
 

 We do not agree with petitioners’ labeling of all proceedings and conversations to which they were not a party as ex parte. As we have noted earlier, petitioners were either not proper parties to the action or were only parties for a limited purpose at the time of those meetings and conversations which took place prior to the filing of the Chapter 11 petition. All of the parties to those earlier actions whose consent was required did consent to the way the proceedings were conducted. We decline to look beyond the consent freely given, and this is more especially true since all of those parties are still before the court and none have challenged the propriety of any of those proceedings. As to Administrative Order 1, we see no difference in that and an order referring a case to a special master. We know of no notice requirement which was violated.
 

 Relatedly, petitioners claim that at one of these ex parte meetings Judge Merhige called attorney Bradley Post a “son-of-a-bitch” and a “wise-ass” lawyer, thus showing the judge’s bias against Mr. Post. Bias against an attorney is not enough to require disqualification under § 455 unless petitioners can show that such a controversy would demonstrate a bias against the party itself.
 
 Davis v. Board of School Com’rs of Mobile County,
 
 517 F.2d 1044, 1050-52 (5th Cir.1975), cert. den. 425 U.S. 944, 96 S.Ct. 1685, 48 L.Ed.2d 188 (1976); 13A Wright, Miller & Cooper,
 
 Fed ’l Pract. & Proc.
 
 § 3542 at 576. For the bias against the attorney to require disqualification of the trial judge, it must be of a continuing and personal nature and not simply bias against the attorney because of his conduct.
 
 Davis
 
 at 1051. Antipathy to an attorney is insufficient grounds for disqualification of the judge.
 
 Gilbert v. City of Little Rock, Ark.,
 
 722 F.2d 1390, 1398 (8th Cir.1983). While the district court’s comments were ill-advised, those remarks alone do not require disqualification.
 
 Shaw,
 
 733 F.2d at 308-09;
 
 United States v. Gregory,
 
 656 F.2d 1132, 1136-37 (5th Cir.1981).
 

 Petitioners’ fourth major ground for seeking Judge Merhige’s disqualification is his financial and legal relationship to cer
 
 *831
 
 tain Richmond, Virginia attorneys involved in this case. Petitioners base this contention on three particular relationships the judge has had with counsel: (1) Judge Mer-hige is a co-investor with Murray J. Janus, local counsel for a group of claimants seeking class action status, in Novus Holding Company in Richmond; (2) Judge Mer-hige’s wife was an investor with George B. Little, local counsel for the first Claimants’ Committee; and (3) Judge Merhige has been represented in the past by Mr. Carle E. Davis of the McGuire, Woods and Battle law firm. McGuire, Woods and Battle was formerly counsel for Robins and is a creditor in the bankruptcy proceeding.
 

 28 U.S.C. § 455(b)(4) provides that a judge shall disqualify himself when “he knows that he ... or his spouse ... has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding.” A financial interest is defined under § 455(d) to be “ownership of a legal or equitable interest, however small, or a relationship as director, advisor or other active participant in the affairs of a party.”
 

 Petitioners’ allegations cannot be read to allege that Judge Merhige has a financial interest in the subject matter of or in a party to the lawsuit as defined by § 455(d).
 

 That section also requires disqualification when the judge has “any other interest” that may be substantially affected by the lawsuit’s outcome. Whether such an interest is disqualifying depends upon “the remoteness of the interest and its extent or degree.”
 
 In re Virginia Elect. & Power Co.,
 
 539 F.2d 357, 368 (4th Cir.1976). As the interest becomes less direct, it will require disqualification only if the litigation substantially affects that interest. Id.
 
 In re New Mexico Natural Gas Antitrust Litigation,
 
 620 F.2d 794 (10th Cir.1980).
 

 Under these applicable legal standards, the interests alleged are insufficient to require disqualification. Judge Merhige has a business relationship with Mr. Janus, local counsel for some claimants. The judge is a passive investor in an office building in Richmond, and has no control over the management of that building. Apparently, Mr. Janus has a like investment in the same building. That investment is in no way related to the Robins bankruptcy. Under the balancing test of
 
 Virginia Electric,
 
 disqualification is not necessary because the outcome of the bankruptcy will in no way affect his business interest, nor apparently that of Mr. Janus. Reviewing the business relationship under a § 455(a) analysis, it would seem highly unreasonable to assume that Judge Merhige’s impartiality would be questioned because of this business relationship with one of the attorneys.
 

 The same can be said of Mrs. Mer-hige’s past business dealings with Mr. Little, local counsel for the first Claimants’ Committee. Mrs. Merhige was an investor, as was Mr. Little, in a real estate venture. The real estate had been sold prior to the time the petition in this case was filed, the exact date not being in the record. Mr. Little represented the joint venture, and of course in a limited way, Mrs. Merhige, and that transaction has been concluded except for payment to Mrs. Merhige. It is unreasonable to believe that Judge Merhige’s impartiality would be questioned on account of this transaction upon which the Robins bankruptcy has no effect whatsoever.
 

 Finally, we reject petitioners’ claim that Judge Merhige should be disqualified because he has been represented in the past by Mr. Davis of McGuire, Woods and Battle. That law firm does not represent any party presently before the court. Petitioners allege that the firm may and should be brought into the bankruptcy proceeding because of a possible conspiracy with Robins. Mr. Davis is not on retainer by Judge Merhige but has in the past drawn up some trusts and wills for the judge and his family. The last time Mr. Davis did any work for the judge was more than two years before this petition was filed. We think
 
 *832
 
 the past representation by McGuire, Woods and Battle should not disqualify Judge Merhige. That firm is involved in no contested matter in the Chapter 11 proceeding; petitioners’ speculations that that may change in the future is insufficient to require disqualification, as is the fact that that law firm has a claim against the company for past services rendered which does not place the firm in any different position than any other creditor in the same situation. Should the law firm be made a party to the proceeding or should its claim be affected, those are matters for another day. The outcome of the bankruptcy case on proceedings therein have no effect on Judge Merhige’s affairs because of his past relation with McGuire, Woods & Battle, and it is not reasonable to believe his impartiality would be questioned on that account.
 

 Lastly, petitioners seek Judge Mer-hige’s disqualification because of his prejudgment of the issues in the Robins bankruptcy. Petitioners claim that prior to the filing of the bankruptcy Judge Merhige expressed the view that the Daikon Shield claims against Robins required a “mass solution.” While not explicitly stated, we can infer that petitioners’ claim that once Judge Merhige concluded that nationwide settlement was the goal sought in the Dai-kon Shield cases, he took it upon himself to see that the goal was accomplished. Petitioners argue that Judge Merhige succeeded when Robins filed its Chapter 11 proceeding in Richmond and Administrative Order 1 was entered giving Judge Merhige control over the case.
 

 We see nothing extraordinary in the course of events leading to Administrative Order 1 and certainly no reason to disqualify Judge Merhige on that account. Robins properly filed its Chapter 11 papers in Richmond because its headquarters are located there. 28 U.S.C. § 1408. Venue is not contested in the bankruptcy case. The fact that Judge Merhige also happens to be stationed in Richmond can in no way affect the fact that venue was proper in Richmond. Robins did no more than file its papers in the proper court. That decision is no reason to disqualify the district judge.
 

 As we have expressed earlier, Administrative Order 1 is not extraordinary, especially in light of the facts surrounding the Robins bankruptcy. That bankruptcy was precipitated by the mounting number of personal injury suits filed against the company over the Daikon Shield.
 
 Piccinin
 
 at 996. Since they caused the bankruptcy, those personal injury claims will, of course, play a significant part in the reorganization or liquidation of the company. Even if Judge Merhige, in August, told a meeting of judges assembled because of the number of Daikon Shield cases being filed that he thought a mass solution was necessary, we see nothing unusual about the statement. Under the Bankruptcy Code, a district court, and not the bankruptcy judge, must try personal injury tort and wrongful death claims. 28 U.S.C. § 157(b)(5). The Administrative Order merely allowed the district court to carry out its duties under § 157. The order itself is consistent with and authorized by 28 U.S.C. § 157(d), which expressly provides that the district court may withhold in whole or in part any bankruptcy case or proceeding referred to a bankruptcy court. We decline to disqualify the district judge for entry of that order.
 

 In summary, we are of opinion that there is no ground upon which disqualification of the district judge is warranted.
 

 II
 

 In their second petition for mandamus relief, petitioners ask this court to require the district court to provide for a verbatim stenographic record of all proceedings in the Robins bankruptcy, both in open court and in chambers. Following Judge Mer-hige’s refusal to recuse himself, the petitioners moved that court for a stenographic record of all proceedings. Following a hearing, that motion was denied. Petitioners assert that an extraordinary writ should issue because they have no adequate remedy at law to force the court to conduct hearings on the record and cite to what they call chronic lack of stenographic
 
 *833
 
 recording of hearings in the past. In support of their claim that hearings were conducted but not recorded, petitioners submit the affidavits of Frederic A. Bremseth, Bradley Post and Mary Beth Ramey. All three are attorneys who represent Daikon Shield claimants in the Robins bankruptcy. All were members of the original Claimants’ Committee.
 

 From those affidavits, we find only three instances of unrecorded hearings. Petitioners initially complain about the conference telephone call of February 1986 by Murray Drabkin, counsel for the Claimants’ Committee, to Judge Merhige, Bankruptcy Judge Shelley, United States Trustee White and local counsel Little. During this conference call which was initiated by Mr. Drabkin, he advised the court that the Claimants’ Committee was seeking his removal and asked how he should proceed. Judge Merhige advised Mr. Drabkin that he should file an appropriate motion. Petitioners claim that such conference call was conducted without their consent or authority. That call should have been recorded, petitioners argue, because shortly thereafter United States Trustee White sought to disband the Claimants' Committee. Petitioners next complain of a hearing in open court on October 1, 1985 that was not recorded. Petitioners do not allude to any order or action taken by the district court following the hearing, but do state that at the October 1st hearing Judge Merhige announced that he would rule on the class action issue at the next hearing. Finally, petitioners complain of an October 22, 1985 hearing in chambers where Judge Merhige made disparaging remarks about Mr. Douglas Bragg.
 

 A district court’s refusal to record proceedings in certain circumstances can be reviewed through a writ of mandamus, for example, when appellate review would be thwarted by its absence.
 
 National Farmers’ Organization, Inc. v. Oliver,
 
 530 F.2d 815, 816 (8th Cir.1976). The recording of district court proceedings is governed by 28 U.S.C. § 753(b), which provides:
 

 (b) Each session of the court and every other proceeding designated by rule or order of the court or by one of the judges shall be recorded verbatim by shorthand, mechanical means, electronic sound recording, or any other method, subject to regulations promulgated by the Judicial Conference and subject to the discretion and approval of the judge. The regulations promulgated pursuant to the preceding sentence shall prescribe the types of electronic sound recording or other means which may be used. Proceedings to be recorded under this section include (1) all proceedings in criminal cases had in open court; (2) all proceedings in other cases had in open court unless the parties with the approval of the judge shall agree specifically to the contrary; and (3) such other proceedings as a judge of the court may direct or as may be required by rule or order of court as may be requested by any party to the proceedings.
 

 Section 753 does not mandate the recording of all phases of a civil proceeding before the district court. Only those proceedings conducted in open court must be recorded unless the parties agree otherwise. The court may order other proceedings recorded if a party so requests. Proceedings held in chambers need not be stenographically recorded.
 
 United States v. Hein,
 
 769 F.2d 609, 610-11 (9th Cir.1985);
 
 United States v. Murphy,
 
 768 F.2d 1518, 1536 (7th Cir.1985);
 
 United States v. Jenkins,
 
 442 F.2d 429, 438 (5th Cir.1971). A trial court’s failure to comply with § 753(b)’s requirements in civil proceedings should not constitute reversible error absent some showing of prejudice. We have so held in
 
 United States v. Snead,
 
 527 F.2d 590 (4th Cir.1975), a criminal case, and the rule in civil cases should not be more stringent. The Fifth Circuit has so held.
 
 Casalman v. Upchurch,
 
 386 F.2d 813 (5th Cir.1968).
 

 The district court was not required to provide for the recording of the February conference call and the October hearing in chambers of which petitioners
 
 *834
 
 complain.’ Neither fall within the requirements of § 758(b). We treat a conference telephone call among lawyers and the judge to be not significantly different than proceedings in chambers and conclude that the statute does not require the presence of a court reporter.
 

 If any action is taken at an unreported hearing in chambers, or ruling made, the court should always enter an order following the hearing to memorialize any action taken by the court. It should also note an objection to each adverse ruling in its order.
 
 We are not advised by petitioners of any action taken by the court at either of these proceedings and we will not presume that the court took any action. Absent such a showing, we find nothing improper about the court’s manner of handling these two proceedings.
 

 We also find no cause to grant a writ of mandamus based upon the court’s failure to record the October 1st hearing. All that petitioners inform us about the hearing is that it in fact occurred and that it was not stenographically recorded. Apparently, Judge Merhige announced at that hearing that he would decide a class action issue at a later date. We assume that nothing was decided at that hearing because petitioners do not refer to any action by the court. Petitioners only refer to the district court’s announcement with respect to the class action issue. Petitioners do not claim that they do not know what happened at the hearing because they were not advised of the hearing or given an opportunity to be present. In his affidavit, Mr. Post, indeed, stated that he was present at the hearing. He does not in any other way describe the matters discussed at the hearing nor any rulings made by the court as a result. There is, then, no factual support that any action was taken at the October 1st hearing, or as a result thereof.
 

 In summary, there is no factual support to suggest any action taken at any of the unreported hearings complained of which would require the entry of orders. No prejudice is even suggested on account of the October 1st hearing which should have been reported. We are thus of opinion that the second petition for mandamus, like the first, is without merit.
 

 Ill
 

 It is accordingly our opinion that the petitions for mandamus are each without merit and that they should be
 

 DENIED.
 

 [1]
 

 . For a further discussion of the facts leading up to the bankruptcy petition, see
 
 A.H. Robins
 
 
 *822
 

 Co., Inc. v. Piccinin,
 
 788 F.2d 994, cert. den. — U.S. -, 107 S.Ct. 251, 93 L.Ed.2d 177 (1986).
 

 [2]
 

 . On the day the Robins bankruptcy was filed, Judge Merhige entered Administrative Order 1 removing from the bankruptcy judge certain proceedings within that case which had previously been referred to the bankruptcy judge under a “General Order of Reference" entered by the district court in August 1984.
 

 [3]
 

 . Mr. Post moved to intervene on behalf of Billie Rae Mercer, whose case was pending in the United States District Court in Kansas. Mr. Manchester moved to intervene on behalf of Janet Rawe, whose case was pending in the United States District Court in Texas; Charlotte Timms, whose case was pending in a state court in Georgia; Kay E. Swenson, whose case was pending in a state court in Texas, and Ellen Surlak, whose case was pending in a United States District Court in New York.
 

 [4]
 

 . Mr. Slaughter is a member of the law firm of McGuire, Woods and Battle of Richmond, Virginia.
 

 [5]
 

 . Lead counsel for the intervenors, Messrs. Manchester and Brandi, did not consent to this meeting. Mr. Manchester was present at the July 18th hearing when this issue was discussed.
 

 [6]
 

 . Two days before the August 9th hearing, Judge Merhige’s office notified Mr. Brandi of the hearing. Due to illness, he was unable to attend.
 

 [7]
 

 . A second motion to intervene may have been later filed but had not been acted on by the court when Robins’ bankruptcy petition was filed. The record is not clear on this point.
 

 [8]
 

 . A full discussion of the transfer order can be found in the
 
 Piccinin
 
 opinion.
 

 [9]
 

 . McGuire, Woods and Battle was counsel for Robins prior to bankruptcy.
 

 [10]
 

 . Messrs. Post, Bragg and Manchester were present at this November 9, 1985 hearing.
 

 [11]
 

 . The committee (as it was constituted prior to its dissolution) asserts that Mr. Drabkin’s telephone communication with the court was contrary to its wishes and instructions given to Mr. Drabkin.
 

 [12]
 

 . As one of the witnesses indicated, the committee was composed of hawks dedicated to attacking the bankruptcy proceeding and doves who sought the rapid conclusion of the bankruptcy.
 

 [13]
 

 . We note that numerous other attorneys, on behalf of their clients, joined in the petition.
 

 [14]
 

 . But see
 
 City of Cleveland v. Krupansky,
 
 619 F.2d 576 (6th Cir.1980). For a review of federal cases considering the use of a writ of mandamus to require a judge’s disqualification, see 56 ALR Fed. 494.
 

 [15]
 

 . Petitioners in their motion for disqualification relied in the district court upon 28 U.S.C. §§ 144 and 455 in seeking Judge Merhige’s disqualification. 28 U.S.C. § 144 provides a procedure by which a party can timely file an affidavit stating the presiding judge’s personal bias or prejudice. 28 U.S.C. § 455 on the other hand is self-executing, requiring a presiding judge to disqualify himself under certain circumstances.
 

 Petitioners do not rely upon § 144 for purposes of this petition and challenge the district court’s action solely under § 455.
 

 [16]
 

 . Petitioners also claim that Judge Merhige’s ex parte conversation on August 1, 1985 with E.C. Robins, Sr. and E.C. Robins, Jr. requires his disqualification under 28 U.S.C. § 455(b), which provides that a judge shall disqualify himself “where he has ... personal knowledge of disputed evidentiary facts concerning the proceeding.”
 

 The argument is not well taken. First, Judge Merhige did not learn any disputed evidentiary facts from his conversation with the Robins. He merely learned the undisputed fact that Robins planned to avoid filing a petition for reorganization if at all possible. Also, Judge Merhige did not learn this information from an extra-judicial source. His knowledge of these facts stem from the course of his judicial duties in presiding over an earlier proceeding. We note again that Judge Merhige engaged in the questioned conversation and learned these facts with the full knowledge and consent of all the parties to that proceeding. Hence, disqualification is not required under § 455(b).
 

 [17]
 

 . Judge Merhige, in fact, never granted such class action status'.