835 F.2d 874
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
In re FEDERAL DEPOSIT INSURANCE CORPORATION, Petitioner.
 No. 87-3862.
 United States Court of Appeals, Fourth Circuit.
 Submitted Oct. 20, 1987.
Decided Nov. 24, 1987.
 
 J. Randolph Pelzer, Pelzer & Associates, P.A., Benjamin A. Moore, Jr., Buist, Moore, Smythe & McGee for Federal Deposit Insurance Corporation.
 Charles W. Wofford, Frank S. Holleman, III, E. Russell Jeter, Jr., McNair Law Firm for respondents.
 Before HARRISON L. WINTER, Chief Judge, and K.K. HALL and SPROUSE, Circuit Judges.
 PER CURIAM:
 
 
 1
 Federal Deposit Insurance Corporation (FDIC) petitions for a writ of mandamus to require Honorable Solomon Blatt, Jr., Chief Judge of the United States District Court for the District of South Carolina, to recuse himself under the provisions of 28 U.S.C. Secs. 144 or 455(a) and (b) or both from FDIC's pending suit. We conclude that the petition is meritorious at least with respect to recusal under Sec. 455(a), but we withhold issuance of the writ to permit the district judge to reconsider his order denying recusal in the light of the opinion we express.
 
 I.
 
 2
 On June 1, 1986, FDIC sued Edward R. "Bobby" Ginn, III, a well-known Hilton Head Island businessman, and an attorney,, Earl D. Hewlette, Jr., charging both with negligence, breach of trust, breach of fiduciary duties, fraud, and misrepresentation. FDIC's interest in the suit stemmed from its acquisition of the assets, including causes of action, of failed banks to which Ginn and his various corporate enterprises owed millions of dollars as a result of their business activities, many of which involved activities and properties on Hilton Head Island.
 
 
 3
 On February 24, 1987, FDIC, acting under 28 U.S.C. Secs. 144 and 455(a) and (b), moved the district judge to recuse himself.[1] The motion was supported by an affidavit of prejudice and a certificate of counsel. The district judge conducted a hearing on the motion and denied it. While consideration of the motion under Sec. 144 is limited to whether the affidavit was timely and legally sufficient to show actual prejudice and bias,[2] consideration under Sec. 455(a) is not so limited. In determining under Sec. 455(a), whether his "impartiality might reasonably be questioned," Judge Blatt was "not bound to accept these allegations [i.e., those set forth in the affidavit] as true." He was entitled to take into consideration "all of the circumstances" which might reflect on his impartiality. See In re Beard, 811 F.2d 818, 827 (4 Cir.1987). At the hearing Judge Blatt stated his agreement and disagreement with facts alleged in the affidavit and also brought forth other relevant facts not set forth in the affidavit. We think that we may properly consider them in determining whether recusal was required under Sec. 455(a).
 
 II.
 
 4
 We hold that recusal was required under Sec. 455(a). Because we reach this conclusion, we do not consider whether the affidavit was legally sufficient to show actual bias or prejudice under Sec. 144 or whether recusal was required by Sec. 455(b).[3]
 
 
 5
 The essential question concerning the application of Sec. 455(a) is the factual one--under all of the circumstances may the impartiality of the judge be reasonably questioned? We turn therefore to the facts which we think provide a basis for Judge Blatt's impartiality reasonably to be questioned.
 
 
 6
 FDIC's suit against Ginn and Hewlette has stimulated great interest in the Hilton Head community as have bankruptcy and receivership proceedings of corporations in which Ginn has a substantial interest. Ginn is a prominent Hilton Head developer and Hewlette is a prominent Hilton Head lawyer. As a result of discovery in FDIC's suit, FDIC may well name as defendants other individuals within the Ginn related organizations who allegedly received money at the expense of FDIC. Some of these individuals are residents of or have close connections with Hilton Head Island.
 
 
 7
 Judge Blatt concededly has a house on Hilton Head Island.
 
 
 8
 Judge Blatt has repeatedly stated, both in and out the courtroom, his strong predisposition to protect the reputation and economic structure of Hilton Head Island against adverse consequences resulting from FDIC's suit and related litigation. Judge Blatt has had numerous conferences with parties to the litigation and others in an attempt to adjust and settle claims against Hilton Head entities and properties. In one such settlement conference the transcript shows that Judge Blatt stated that he had talked to the Commissioner of Golf about a tournament called the Heritage; he described the gravity of the situation affecting Hilton Head; and he cautioned those present that they could not, short of some sort of emergency, leave the conference until the possibility of a favorable solution was exhausted. In the course of the conference he later added:
 
 
 9
 There just has got to be a solution for the problems on Hilton Head Island.
 
 
 10
 Just so many people are involved, so many families are involved, Judge Eltzroth [the presiding state judge in state court litigations concerning Hilton Head] and I feel that probably the most beautiful place in the world is involved, and we're not going to let it go down and lose that Heritage nor that Family Circle Tennis Tournament. Those are two things we're not going to lose, although they may teeter in the balance, but we're just not going to lose them. We're not going to let it happen because I think it would be just damaging beyond repair to the island and to the state of South Carolina. To Beaufort County and to the state.
 
 
 11
 We are going to devote our efforts, and I think the efforts of many of you, to salvage everybody, if that can be done. And those we can't salvage, we're going to try to do the best we can.
 
 
 12
 In July 1986, Judge Blatt requested the lawyers involved in the Ginn litigation, including counsel for FDIC to declare a two-months moratorium on all litigation activities, both in federal and state courts, in order to allow the Island to "settle down" so that among other things, the National Governors Conference which was scheduled to be held on the Island in August, 1986, would not be adversely affected. Judge Blatt conceded during hearing on FDIC's motion for recusal that he requested the moratorium, but was uncertain of its duration.
 
 
 13
 FDIC urges on us other facts to show actual prejudice or bias such as the assertion that Judge Blatt repeatedly consulted with counsel ex parte in attempts to bring about settlements;[4] that Ginn and his counsel were present at social events of an undisclosed size at which Judge Blatt was host; that Ginn's counsel referred to Judge Blatt by the nickname "Sol", evidencing close personal familiarity and suggesting that they had discussed the litigation; and that Judge Blatt's ruling in the Ginn bankruptcy case[5] demonstrated actual prejudice or bias. We however, place no reliance on these allegations in deciding this case. Rather we rest on the other facts we have recited above.
 
 
 14
 What emerges from these facts is that Judge Blatt, a Hilton Head homeowner, has amply demonstrated an abiding and declaredly paramount interest in the economic well-being and reputation of Hilton Head Island and that as a judicial officer he initiated a moratorium on litigation affecting Hilton Head where he thought that such litigation would besmirch the reputation of the Island. Perhaps all of the activities and statements of Judge Blatt of which FDIC complains could be understood to be a commendable effort on the part of Judge Blatt legitimately to preserve the Island's reputation and economic well-being. But they may also be reasonably interpreted to have the contrary meaning. Judge Blatt's concern about Hilton Head Island's reputation and well-being is ostensibly so strong that his impartiality may reasonably be questioned, where, as here, FDIC's suit or associated publicity may also besmirch the Island's reputation and affect adversely its economic well-being. It is not only the strength of Judge Blatt's concerns, but indications that his concern stems from extrajudicial sources,[6] that lead us to conclude that Judge Blatt's impartiality in this lawsuit may reasonably be questioned.
 
 III.
 
 15
 We reject the contention of the respondents that FDIC's motion is not timely and should be denied for its lateness. Section 455 provides no time certain for the filing of a motion to recuse a judge, although it undoubtedly requires a timely assertion of grounds for disqualification. The FDIC complaint was filed in June, 1986 and the motion to recuse in February, 1987. The case has not yet been tried. Indeed in the papers before us there is an indication that a motion to dismiss is still pending and unheard even though there has been considerable discovery. More importantly the facts providing a reasonable basis on which to question Judge Blatt's impartiality have become known only as this and other litigation adversely affecting Hilton Head have progressed. The facts were certainly not known at the time of the filing of FDIC's complaint or shortly thereafter. We cannot say, given the posture of the FDIC suit, the manner in which FDIC became aware of Judge Blatt's attitudes toward Hilton Head and the manner in which they were expressed, that FDIC's motion for recusal was untimely.
 
 IV.
 
 16
 While we thus conclude that Judge Blatt should have recused himself from presiding over the FDIC litigation, we see no necessity formally to issue the writ. We have no doubt that Judge Blatt will take further steps in accordance with the views expressed herein. While the clerk may docket the decision as "Petition for a Writ of Mandamus Granted", he should withhold formal issuance of the writ.
 
 
 17
 It is so ORDERED.
 
 
 
 [1]
 The text of the two statutes to the extent pertinent, is as follows:
 Sec. 144. Bias or prejudice of judge
 Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.
 The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists, and shall be filed not less than ten days before the beginning of the term at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such time. A party may file only one such affidavit in any case. It shall be accompanied by a certificate of counsel of record stating that it is made in good faith.
 Sec. 455. Disqualification of justice, judge, or magistrate
 (a) Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.
 ...
 
 
 [2]
 See Berger v. United States, 255 U.S. 22, 32-35 (1921); United States v. Richards, 737 F.2d 1307, 1311 (4 Cir.1984), cert. denied, 469 U.S. 1106 (1985); United States v. Haldeman, 559 F.2d 31, 133 (D.C.Cir.1976), cert. denied, 431 U.S. 933 (1977)
 
 
 [3]
 The legislative history of Sec. 455(a) reveals that it is a separate, independent basis for disqualification of a judge. Section 455(a) is intended to be a "general, or catch-all provision that a judge shall disqualify himself in any proceeding in which 'his impartiality might reasonably be questioned.' " H.Rep. No. 1453, 93d Cong.2d Sess., reprinted in 1978 U.S.Code Cong. & Admin.News 6351, 6354
 [The] specific situations listed in subsection (b) are in addition to the general standard set forth in subsection (a). Thus, by setting specific standards, Congress can eliminate the uncertainty and ambiguity arising from the language in the existing statute and will have aided the judges in avoiding possible criticism for failure to disqualify themselves.
 Id. at 6355 (emphasis added). S.Rep. No. 419, 93d Cong., 1st Sess. 5 (1973), is to the same effect.
 Upon close reading, the language in United States v. Sibla, 624 F.2d 864 (9 Cir.1980), is not to the contrary. In Sibla, the court stated that Sec. 455(b) provides examples of Sec. 455(a) violations. Since Sibla's only allegation of a predicate act fell under (b)(1), the court dismissed the argument that it should consider an independent basis for dismissal under (a) on the facts before it. Id. at 867. Sibla's holding on the relationship between Sec. 455(a) and Sec. 455(b)(1) falls short of stating that Sec. 455(a) is not a separate ground.
 This conclusion is consistent with our precedents. Subsection 455(a) is "a catch-all provision of broader scope than the combined specific disqualification provisions of subsection (b)." Rice v. McKenzie, 581 F.2d 1114, 1116 (4 Cir.1978). We have held that the appearance of impartiality alone is sufficient to require recusal. See, e.g., Rice v. McKenzie, 581 F.2d at 1117-18 (district judge who did not recall a case he participated as a state judge was disqualified under Sec. 455(a) from federal habeas corpus proceedings).
 
 
 [4]
 FDIC alleges extensive and repeated ex parte contacts with the litigants. Judge Blatt noted during hearing on FDIC's motion for recusal that his ex parte contacts were part of his efforts to reach a settlement in this case. Not every ex parte contact is a sufficient basis for recusal under Sec. 455(a). See In re Beard, 811 F.2d at 829-30 (ex parte contacts involving only proposed procedural order not a basis for disqualification). However, we note that repeated and protracted contacts presumably concerning the underlying merits of a suit do not further a judge's appearance of impartiality
 
 
 [5]
 When various Ginn companies sought protection under the bankruptcy laws, Judge Blatt retained jurisdiction over the action, revoking a rule of automatic reference to the bankruptcy court. Judge Blatt stated that this is the first time in fifteen years on the bench that he has taken such action
 
 
 [6]
 Judge Blatt's observation that "I feel that probably the most beautiful place in the world is involved;" his house on the Island; and other statements and actions suggest a basis of knowledge that is personal, not judicial, in nature