852 F.2d 565
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
In re FEDERAL SAVINGS AND LOAN INSURANCE CORPORATION and
Glenn M. Young, Petitioners.
 No. 88-3814.
 United States Court of Appeals, Fourth Circuit.
 Submitted: March 14, 1988.
Decided: July 11, 1988.
 
 (James Paul Murphy, Allen W. Levy, Squire, Sanders & Dempsey; Jordan Luke, Jose P. Ceppi, Office of General Counsel, Federal Home Loan Bank Board), for petitioner.
 (Mary Goman Slocum, Office of the U.S. Trustee; Edward James Westbrook, Motley, Loadholt, Richardson & Poole; John Waites, Trustee, U.S. Department of Justice; Robert Geoffrey Levy, Trustee, Levy & Goodwill), for respondent.
 Before HARRISON L. WINTER, Chief Judge, and K.K. HALL and SPROUSE, Circuit Judges.
 PER CURIAM:
 
 
 1
 The Federal Savings and Loan Insurance Corporation ("FSLIC") petitions for a writ of mandamus to compel Honorable Solomon Blatt, Jr., Chief Judge of the United States District Court for the District of South Carolina to recuse himself from certain bankruptcy proceedings in which FSLIC is a party. FSLIC also seeks to require Judge Blatt to vacate an order entered on February 8, 1988, which denied FSLIC's motion for recusal, revoked the admission to practice pro hoc vice of FSLIC's lead counsel, and referred the bankruptcy case to the United States Bankruptcy Court for the District of South Carolina. Although we do not applaud all of the tactics of FSLIC in this matter, we regretfully conclude that Judge Blatt's participation has created an appearance of impaired impartiality that can only be remedied through mandamus.
 
 I.
 
 2
 This dispute arose from bankruptcy proceedings involving companies that owned a substantial portion of the land on Hilton Head Island, South Carolina. The land at issue was purchased in 1985 by E.R. Ginn III from Marathon Oil Company ("Marathon") and another company. Ginn accomplished the acquisition with the assistance of extensive loans from various financial institutions including Southern Floridabanc Savings Association ("SFB"). In March, 1986, the Ginn interests on Hilton Head were acquired by companies principally controlled by Phillip B. Schwab.
 
 
 3
 Marathon and SFB subsequently commenced foreclosure actions against the Schwab companies. The litigation was assigned to Chief Judge Blatt, who appointed foreclosure receivers on the property. Two days later, on November 21, 1986, the Schwab companies were placed in involuntary Chapter 11 bankruptcy. The companies then sought voluntary protection under Chapter 11 by filing petitions in the Southern District of New York.
 
 
 4
 It is undisputed that Judge Blatt personally contacted the bankruptcy judge in New York to whom the matter had been assigned and suggested that the portion of the case relating to Hilton Head be transferred back to South Carolina. The transfer was subsequently ordered and Judge Blatt assumed personal control over the litigation.
 
 
 5
 On April 16, 1987, SFB, one of the largest creditors in the bankruptcy cases pending before Judge Blatt, was declared insolvent by the Federal Loan Bank Board. In accordance with established procedure, FSLIC was appointed as receiver of SFB's assets and thus, entered the bankruptcy proceedings as successor-in-interest to the failed lending institution.
 
 
 6
 FSLIC was represented in the ensuing proceedings by Glenn M. Young of the law firm of Squire, Sanders and Dempsey. Young was admitted to practice in South Carolina pro hac vice under the local rules of the bankruptcy court. The tenor of Young's representation was, to say the least, aggressive.
 
 
 7
 On July 1, 1987, Young moved to disqualify certain lawyers representing the bankruptcy trustee including John C. West, a former governor of South Carolina, and Thomas L. McCutchen. Disqualification was sought on the ground that in violation of 11 U.S.C. Sec. 327(e), neither West's nor McCutchen's firm had disclosed that attorneys from those firms had been employed by the debtor within two years of the bankruptcy proceeding. During the resulting hearing, Judge Blatt expressed displeasure with what he perceived as an attack by FSLIC upon former Governor West's personal integrity. In response, FSLIC moved that Judge Blatt recuse himself from further participation in the disqualification motion. Judge Blatt promptly denied both the motion for recusal and the motion for disqualification, concluding that any violation of 11 U.S.C. Sec. 327 had been "inadvertent."
 
 
 8
 FSLIC filed a notice of appeal challenging the denial of both of its motions. The appeal was subsequently dismissed as part of a settlement agreement reached between FSLIC and the trustee. Pursuant to that agreement, the Trustee conveyed certain collateral to FSLIC and sold other assets of the estate at public auction. From the proceeds of that auction, a $3,000,000 escrow fund was created to satisfy the unsecured creditors. The agreement further provided that if the unsecured creditors were otherwise adequately compensated in the final liquidation, the fund would be paid in its entirety to FSLIC. The fund was subject, however, to the administrative expenses of the estate, including attorneys' fees. It, therefore, became in FSLIC's interest to oppose the fee requests of the Trustee's attorneys.
 
 
 9
 On November 18, 1987, Judge Blatt referred the remaining bankruptcy proceedings to the bankruptcy court with the exception of the question of fees, costs and expenses. In that area, he retained personal jurisdiction and scheduled a hearing on the issue for February 2, 1988.
 
 
 10
 Prior to the February 2 hearing, Young filed on behalf of FSLIC a declaration asking Judge Blatt to recuse himself "from all matters involving the Hilton Head Bankruptcies and all related cases." As justification for the motion, FSLIC cited five grounds:
 
 
 11
 (1) the opinion of this Court in In Re Federal Deposit Insurance Corp., No. 87-3862 (4th Cir. November 24, 1987) which directed Judge Blatt to recuse himself from another proceeding involving Hilton Head;
 
 
 12
 (2) Judge Blatt's long-standing personal relationship with both West and McCutchen;
 
 
 13
 (3) Judge Blatt's allegedly unusual action in "reaching out" for jurisdiction over the case;
 
 
 14
 (4) repeated ex parte contacts between Judge Blatt and the Trustee as well as Trustee's counsel; and
 
 
 15
 (5) Judge Blatt's statement, quoted in the January 1, 1988 edition of a local Hilton Head newspaper, in which he described his role in the bankruptcy proceedings as that of "the people's buyer."
 
 
 16
 At what appears to have been a somewhat stormy hearing on February 2, Judge Blatt angrily rejected FSLIC's motion. Addressing each point of the motion, in sequence, Judge Blatt suggested that this Court's decision in In Re Federal Deposit Insurance was based, in part, on a misunderstanding of the significance of his status as a home owner on Hilton Head. He further concluded that, in any event, Federal Deposit Insurance had no bearing on FSLIC's motion.
 
 
 17
 Judge Blatt conceded that he had a long-standing friendship with former Governor West and that McCutchen had represented him in his capacity as administrator of his father's estate. He further conceded that his son and West's son were partners in a Hilton Head business. The Chief Judge dismissed these circumstances, however, as the normal result of a long career in the law which inevitably brought personal contacts with attorneys and, thus, were insufficient to merit recusal. Judge Blatt also criticized Young's motion for incorrectly suggesting that McCutchen had sealed the probate records of the estate of Judge Blatt's father which the Chief Judge described as "a direct effort to desecrate the memory of my father."
 
 
 18
 Judge Blatt also rejected as grounds for recusal his successful effort to obtain the transfer of the bankruptcy case from New York to South Carolina reasoning that time had been of the essence in an effort to protect the economic well-being of the Hilton Head community and that a prompt resolution would have been possible only in his court. He further rejected FSLIC's position on ex parte contacts, concluding that ex parte conferences with "everybody" was part of his normal judicial procedure. Finally, the Chief Judge asserted that his statements in the Hilton Head newspaper reflected nothing more than his general concern for the community and did not raise any question of bias for or against the parties. Accordingly, FSLIC's motion for recusal was denied.
 
 
 19
 In the course of the bench colloquy, Judge Blatt occasionally diverged from his analysis of the motion to directly criticize Young's performance. In the Chief Judge's view, Young had failed to pursue recusal in a timely fashion, had used motions for disqualification and recusal as intimidating tactical weapons, and had misstated or distorted facts in the record. After announcing his decision on the recusal motion, Judge Blatt informed Young that
 
 
 20
 I'm going to revoke your right to practice pro hac vice in this case and I'm going to require that before you apply, not your firm, before "you" apply to be admitted to any court in the state of South Carolina to practice pro hac vice, that you apply, that you give that judge a copy of what I have had to say so he will know who he is dealing with.
 
 
 21
 Finally, Judge Blatt observed that "I know if I stay in this case, you're [FSLIC] going to appeal ... and spend hundreds of thousands of dollars more of unsecured creditors money...." He, therefore, ruled that the whole remaining case would be referred to the bankruptcy court. The denial of the recusal motion, the revocation of Young's admission, and the referral of the case to the bankruptcy court for a "full and final" determination were all subsequently embodied in a formal order of the district court.
 
 
 22
 At that juncture, the instant petition for a writ of mandamus was filed with this Court on behalf of FSLIC and its chief counsel, Mr. Young. Petitioners contended that the extraordinary remedy of mandamus was merited because Judge Blatt had failed to conform to the duty imposed by 28 U.S.C. Sec. 455 of recusing himself in circumstances where "his impartiality might reasonably be questioned." Petitioners also contended that mandamus or a writ of prohibition was necessary to address the improper revocation of Young's pro hac vice admission. Concluding that petitioners' allegations raised questions of serious concern, we directed that a response be filed on behalf of Judge Blatt. We have now received and considered that response, as well as submissions by the Trustee. The matter is, therefore, ripe for disposition.
 
 II.
 
 23
 The respondent and the Trustee have advanced substantially similar arguments in opposition to the petition. It is contended that (1) the petition is essentially moot because Judge Blatt has in fact recused himself by transferring this case to the bankruptcy court; (2) the grounds for FSLIC's recusal motion were apparent as early as July of 1987 and that the belated attempt to force recusal through an untimely petition should not be sanctioned; and (3) the recusal effort is meritless because there is no reasonable basis to challenge Judge Blatt's impartiality. Respondent also contends that the revocation of Young's pro hac vice admission was justified by his repeated acts of misconduct; did not violate local rules or the dictates of due process; and left him avenues other than mandamus in which to seek vindication. Respondent maintains that there is, therefore, no compelling justification for mandamus in this matter. We must disagree with respondent's position.
 
 
 24
 Although mandamus is generally a drastic remedy to be used only in extraordinary situations, Kerr v. United States, 462 U.S. 394 (1976), it may be issued by the Court of Appeals when supervisory control of the district court is "necessary to the proper judicial administration of the federal system." United States Board of Parole v. Merhige, 487 F.2d 25 (4th Cir.1973), quoting LaBuy v. Howes Leather Co., 352 U.S. 244, 259-60 (1957). We are fully persuaded that such supervisory control is required here. The affirmative duty of a federal judge to recuse himself from proceedings in which his impartiality might reasonably be questioned is both personal and independent of any specific request from the litigants. In re Board, 811 F.2d 818 (4th Cir.1987). In this instance, the Chief Judge's impartiality in matters relating to Hilton Head Island was clearly subject to reasonable questioning after this Court's November 24, 1987, decision in In re Federal Deposit Insurance Corporation.
 
 
 25
 In Federal Deposit, we noted that Judge Blatt's well-documented public concern for Hilton Head Island was so strong that his impartiality in litigation that might adversely affect that community could be reasonably questioned.[1] In light of Federal Deposit, we believe that further participation by Judge Blatt in any litigation involving, however peripherally, the economic problems of Hilton Head was open to challenge.
 
 
 26
 The specific facts of the present case further support a reasonable question concerning Judge Blatt's impartiality. The principal issue remaining in the case is the level of attorney's fees. The potential beneficiaries of any decision include two attorneys who have had extensive personal and professional relationships with the presiding judge. We recognize, as respondent urges, that in a small state such as South Carolina, with a close-knit bar, lawyers and judges will frequently know each other. There is, however, a substantial difference between being acquainted and the type of long-standing involvement Judge Blatt concedes that he has had with both West and McCutchen.
 
 
 27
 We do not suggest, in any fashion, that Judge Blatt would have allowed his prior relationship with the Trustee's attorneys to affect his determinations. Unfortunately, there would be ample reason for FSLIC and the public at large to question whether he could with impartiality make the subtle evaluations necessary to set the appropriate level of compensation for those individuals.[2] It was, therefore, a clear violation of the Chief Judge's independent duty under 28 U.S.C. Sec. 455 to preside over this matter.[3]
 
 
 28
 We cannot accept respondent's suggestion that the referral of the fee dispute to the bankruptcy court has mooted the issue of his recusal. In the first instance, the bankruptcy court operates under the jurisdiction of the district court and the matter is, thus, still within the broad ambit of the Chief Judge's authority. Even more significantly, the referral does not dissipate the shadow on the appearance of impartiality created by Judge Blatt's initial participation. Indeed, it would darken that shadow if the district court were to be permitted to take action in contravention of its statutory duty and then effectively insulate itself from appellate scrutiny by transferring the dispute to a lesser tribunal.
 
 III.
 
 29
 We can perceive but one method that will restore the public image of judicial impartiality in this case. The district court's order of February 8, 1988, must be vacated in its entirety. FSLIC's motion for recusal must be granted and the remaining case assigned to another district judge.[4] Accordingly, it is ORDERED that the petition for a Writ of Mandamus is granted. Pursuant to this order, Chief Judge Solomon Blatt will vacate his order entered on February 8, 1988, and recuse himself from all further participation in this matter.
 
 
 30
 It is so ORDERED.
 
 
 
 [1]
 In his review of Federal Deposit, Judge Blatt placed far more emphasis on our observation that he is a Hilton Head landowner than was warranted. The Chief Judge's residence was simply a small part of the totality of the circumstances which led to the conclusion to Federal Deposit
 
 
 [2]
 In Liljeberg v. Health Services Acquisition Corp., --- S.Ct. ----, 1988 WL 59897 (U.S. June 17, 1988), the Supreme Court strongly reaffirmed the rule that recusal is required by Sec. 455 whenever a reasonable observer would question a district judge's impartiality
 
 
 [3]
 Respondent's objection to the timeliness of FSLIC's recusal efforts is essentially irrelevant to the nature of the duty imposed by the statute
 
 
 [4]
 We find it unnecessary to address the due process claims asserted by petitioners with regard to the revocation of Young's pro hac vice admission. Vacating the February 8, 1988, order will automatically restore Young's admission. Whether there is any basis for imposing discipline upon FSLIC's counsel for his actions in this matter remains an open question upon which we express no opinion. We assume, however, that disciplinary measures, if any, will be imposed after prior notice and an opportunity to be heard