966 F.2d 1442
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Sanford A. HARRIS; Alan M. Grochal, General Equity
Receivers of the Assets of Atlantic Bargain
Center, Incorporated, Plaintiffs-Appellees,
v.
Patrick ROBERTO, Defendant-Appellant,
and
John C. LEONE; Jackson Taunton; Dismas Community Treatment
Center; Christopher Gervasi; Alfred Forman; Quantity
Wholesaler and Liquidators, Incorporated, a dissolved
corporation; Classic Beauty Supplies, Incorporated, Defendants.
 No. 91-2374.
 United States Court of Appeals,
Fourth Circuit.
 Submitted: April 28, 1992
Decided: July 2, 1992
As Amended July 21, 1992.
 
 Appeal from the United States District Court for the District of Maryland, at Baltimore. Frank A. Kaufman, Senior District Judge. (CA-87-2175)
 Patrick Roberto, Appellant Pro Se.
 Melvyn Jack Weinstock, Weinstock, Stevan & Harris, Baltimore, Maryland, for Appellees.
 D.Md
 AFFIRMED.
 Before WIDENER and HAMILTON, Circuit Judges, and CHAPMAN, Senior Circuit Judge.
 OPINION
 PER CURIAM:
 
 
 1
 Patrick Roberto appeals the district court's grant of summary judgment to Plaintiffs, holding Roberto and his codefendants jointly and severally liable for damages arising from their participation in a corporate "bust-out" scheme. Because there are no material facts in dispute and Plaintiffs were entitled to prevail as a matter of law, we affirm.
 
 
 2
 The plan for the particular type of fraud involved in this case, known as a "bust-out," generally begins when a person or group of people establish a business concerned with the sale of consumer goods. Front men are used to run the day to day operations of the business. Using start-up funds, modest orders are placed with manufacturers and suppliers, and prompt payment is made for the purposes of establishing credit and obtaining credit references. Additional orders are then placed with the same suppliers using credit. Actual retail trade is minimal and most of the goods ordered are immediately shipped after receipt to warehouses and consumer good outlets controlled by the parties that provide the start-up funds and inventory. After an agreed-upon cut-off date, payments to suppliers are stopped. Shipments of goods by the front men to their backers continue until valuable inventory has been exhausted. As the creditors' demands for payments increase, the "bust-out" occurs with the business declaring Federal bankruptcy or, in this case, the state equivalent: assignment for the benefit of creditors. The creditors are left with a less valuable inventory to satisfy their claims.
 
 
 3
 In December 1983, Roberto filed Articles of Incorporation with the Maryland Department of Assessments and Taxation, thus establishing Atlantic Bargain Center, Inc., as a Maryland Corporation. In January of 1983, he opened a checking account for Atlantic Bargain Center and made deposits until April 25, 1984, totalling approximately $70,000.
 
 
 4
 In March of 1984, Roberto leased commercial space on behalf of Atlantic Bargain Center in Towson, Maryland, for the purposes of operating a retail and/or wholesale operation to sell health and beauty aids, household goods, small appliances and other nonperishable products. The store, owned by Roberto, opened on April 1, 1984. Roberto was also the president of the Atlantic Bargain Center. In addition to the commercial space, Atlantic Bargain Center also leased warehouse space in Timonium, Maryland, in property owned by Timonium Commerce Park, Co., and managed by Hill Management Services, Inc.
 
 
 5
 Using start-up funds provided by Anthony Leone, Atlantic Bargain Center purchased goods from manufacturers and suppliers across the country. By doing so, it established credit and obtained credit references. It then ordered goods on credit from over seventy creditors, leaving balances due of $1,555,302.69. In fact, the retail trade of Atlantic Bargain Center was virtually nonexistent. Almost all of the activity at the store took place on the loading dock, where goods were loaded onto trucks and shipped to a warehouse in Florida operated by Defendants Leone and Taunton.
 
 
 6
 On February 1, 1985, one truck load containing goods which were either dated products or items with poor marketability was shipped from Florida to Atlantic Bargain Center. This shipment was intended to be left for division among Atlantic Bargain's creditors.
 
 
 7
 On February 14, 1985, Roberto met with the accountants of the law firm of Weinstock, Stevan & Harris, P.A., who then represented four of Atlantic Bargain Center's creditors. Plaintiff Sanford A. Harris learned from Roberto that Atlantic Bargain Center was insolvent. At the meeting, the claims of the creditors were discussed as well as the possibility of filing an assignment for the benefit of creditors. Roberto told Harris that all of the employees had been fired and that Atlantic Bargain Center was no longer in business. After Harris twice visited Atlantic Bargain Center and found a sign that stated it would "Reopen tomorrow at 9 a.m.," he applied for appointment as a general equity receiver on February 21, 1985. Alan M. Grochal, acting on behalf of another creditor, did the same.
 
 
 8
 On February 25, 1985, attorneys Albert Miller and Michael Rinn filed an answer to the Complaint for Appointment of a Receiver, alleging that articles of transfer of property for the benefit of creditors had been filed on or about February 22, 1985, with the Maryland State Department of Assessments and Taxation. On the same date, Miller and Rinn filed a Petition with the Circuit Court of Maryland for Baltimore County requesting the court to assume jurisdiction over the estate of the Debtor, but failed to note the pendency of the receivership proceeding. The court granted the petition and assumed jurisdiction on February 26, 1985.
 
 
 9
 The Assignees failed to file a bond and failed to take any action to protect the assets of the Debtor until a bond was filed on March 15, 1985. On March 18, 1985, the Assignees Rinn and Miller voluntarily dismissed the assignment proceedings.
 
 
 10
 On March 19, 1985, Plaintiffs Harris and Grochal were appointed general equity receivers. They visited the premises of Atlantic Bargain Center and found it locked and empty.
 
 
 11
 On February 19, 1985, Hill Management Services filed eviction proceedings for the Timonium Commerce Park property. The premises were posted with the notice of eviction. Notice sent to the lessee of the property was returned marked "not delivered." The landlord's representative was the only one to appear at the eviction hearing. On March 7, 1985, the District Court for Baltimore County signed a warrant of restitution. Immediately thereafter, Constable Sam Varano visited the premises with representatives of the landlord. These representatives used a forklift and flatbed truck to remove all of the debtor's property from the premises. The goods were taken to a warehouse owned by the landlord, who, Roberto alleges, eventually allowed unknown persons to carry away most of the goods.
 
 
 12
 On July 1, 1987, Patrick Roberto pled guilty to a federal indictment charging him in connection with a "bust-out" scheme with conspiracy to commit offenses against the United States. Roberto did not dispute the factual basis for his plea.
 
 
 13
 This appeal concerns the civil suit brought by the general equity receivers of the assets of Atlantic Bargain Center. The district court granted Plaintiffs' motion for summary judgment based on the record and the accompanying affidavits, and ordered judgment in the amount of $1,555,302.69. The order specified that each and all of the Defendants involved in the "bust-out" plan were to be held jointly and severally liable for the full amount.
 
 
 14
 Roberto does not dispute the facts alleged by Plaintiffs in their affidavits and supporting documents, including the plea agreement and the factual basis given by the Government. Moreover, our review of the record reveals that there is more than ample factual support for a claim of fraud under Maryland law. See James v. Weisheit, 367 A.2d 482, 484 (Md. 1977) (claim for common law fraud under Maryland requires proof of (1) representation of a material fact; (2) falsity of that fact; (3) knowledge of its falsity; (4) intent to defraud; (5) Plaintiff's right to rely on the representation with full belief in its truth; and (6) injury in fact). Roberto does contest his being held jointly and severally liable for the full amount of the fraud. He claims that his participation was restricted to being a "front man" for the scheme, and therefore his liability should be limited to $70,000. We believe the district court acted within its authority in ordering that Defendants be held jointly and severally liable for the full amount of the award. The record establishes that Roberto's role was significant and that the Defendants' actions were combined to effectuate the"bust-out" scheme.
 
 
 15
 Roberto also argues that the district court should afford him the same consideration it gave Classic Beauty Supplies, Inc., and Quantity Wholesaler & Liquidator, Inc., when it dismissed them because they had dissolved and no longer had any assets. Roberto contends that he, too, has no assets and has been unemployed"on several occasions [sic] during the course of this case." This argument is without merit and does not call into question Roberto's own admitted involvement and liability.
 
 
 16
 Roberto also alleges that he never received the later of two district court notices that Plaintiffs had moved for summary judgment and was therefore not given an adequate opportunity to respond. See Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975). He contends that had he received such notice, he would have disputed the award eventually granted Plaintiffs. However, to date he has offered no evidence or argument to explain why the amount awarded was unfair, and it is undisputed that the amount of the judgment represents the claims for consumer goods shipped to Atlantic Bargain Center filed by creditors and the assignment for the benefit of creditors. Because we do not believe that Roberto's response to the motion for summary judgment would have altered the outcome of the case, his contention that he did not receive the second Roseboro notice, if true, would be harmless error. Fed. R. Civ. P. 61 (error in a district court's order harmless unless it appears to be "inconsistent with substantial justice").
 
 
 17
 Roberto also objects to the fact that the district court never inquired into statements that the landlord allowed over $500,000 in goods to be carted away. Even if Roberto's contention that the landlord should be held responsible for the loss is true, it does not absolve Roberto or diminish his liability. Any remedy Roberto has in this regard, is against the landlord, not in this federal litigation to which the landlord is not a party.
 
 
 18
 Finally, Roberto raises questions concerning the judge's impartiality. As evidence of the court's bias, Roberto points to the suggestion to Plaintiffs to drop the RICO claim and to reinstate the common law fraud claim. Roberto contends that at the point that RICO was the only claim, the district court should have dismissed the entire case since the court later stated that Plaintiffs had not proven each element required to sustain such a claim. This claim ignores the fact that Plaintiffs were able to prevail on the fraud claim. In addition, we do not believe the judge's involvement rendered the proceedings fundamentally unfair; See Gaskins v. McKellar, 916 F.2d 941 (4th Cir. 1990), cert. denied, 59 U.S.L.W. 3809 (U.S. 1991), nor do we believe the judge's impartiality may reasonably be questioned. See In re Beard, 811 F.2d 818 (4th Cir. 1987).
 
 
 19
 Based on the undisputed facts and the applicable law, the judgment of the district court is affirmed.* We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court and argument would not aid the decisional process.
 
 AFFIRMED
 
 
 *
 Appellees' motion to dismiss is therefore moot