64 F.3d 655
 66 Empl. Prac. Dec. P 43,740
 NOTICE: Fourth Circuit Local Rule 36(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Eartha ARVIN-THORNTON, Plaintiff-Appellant,
v.
PHILIP MORRIS PRODUCTS, INCORPORATED, Defendant-Appellee.
 No. 94-2012.
 United States Court of Appeals, Fourth Circuit.
 Aug. 17, 1995.
Decided: August 17, 1995
 
 Eartha Arvin-Thornton, appellant pro se.
 Hill B. Wellford, Jr., Jeffrey Mark DeBord, Paige Hargroves Goodpasture, HUNTON & WILLIAMS, Richmond, Virginia, for Appellee.
 Before HALL, WILKINS and MICHAEL, Circuit Judges.
 
 OPINION
 
 1
 PER CURIAM;
 
 
 2
 Eartha L. Arvin-Thornton ("Arvin-Thornton") appeals the district court's grant of judgment to the Defendant after a bench trial. Arvin-Thornton brought this action pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.A. Sec. 2000e (West 1994 & Supp.1995), alleging that Philip Morris discharged her due to her religious beliefs. For the reasons stated below, we affirm the district court's order.
 
 
 3
 Arvin-Thornton is a Hebrew Israelite and a longstanding member of the Yahweh Ben Yahweh religion. Arvin-Thornton worked at Philip Morris as a laboratory technician. During her employment, various co-workers harassed her about her religion. A magazine article and a video tape negatively portraying the Yahweh Ben Yahweh religion were circulated among the workers in Arvin-Thornton's department. Additionally, when Arvin-Thornton displayed a photograph of Yahweh Ben Yahweh on her desk, her supervisor, feeling that an open display of religious materials in a common work area was inappropriate, asked Arvin-Thornton to remove the photograph.
 
 
 4
 Arvin-Thornton received satisfactory performance appraisals from 1989 through 1992. The appraisals, however, reflected that Arvin-Thornton needed to improve in several areas. In January 1992, a new laboratory rotation was initiated and Arvin-Thornton began working in four different laboratories. The new arrangement accentuated Arvin-Thornton's problems. Specifically, Arvin-Thornton was unable to operate some of the laboratory equipment and she repeatedly made serious errors that resulted in invalid or incomplete data. Additionally, on two separate occasions Arvin-Thornton mistakenly deleted data from the laboratory computer, which required considerable time for other employees to correct.
 
 
 5
 In September 1992, Arvin-Thornton's supervisors drafted an interim performance appraisal to alert Arvin-Thornton to her deficiencies. This appraisal, however, was never given to Arvin-Thornton. A member of Philip Morris's Human Resources Department advised Arvin-Thornton's supervisors not to issue the evaluation because all of the technicians were scheduled to be evaluated as part of an upcoming reorganization.[1]
 
 
 6
 In October 1992, Philip Morris consolidated its Quality Assurance and Research and Development Departments, and some positions were eliminated. The managers of the two departments ranked all the employees working in the laboratories. Arvin-Thornton ranked last out of sixteen laboratory technicians. Gail Yoss, another laboratory technician, was ranked second to last. Yoss's and Arvin-Thornton's performance appraisals were virtually identical. Philip Morris informed Arvin-Thornton that her position was being eliminated and gave her the opportunity to interview for a lateral transfer to another laboratory position within the company.
 
 
 7
 Arvin-Thornton interviewed for a lateral position, but did not receive the job because she did not show sufficient understanding of basic necessary skills. Yoss was allowed to continue working at Philip Morris, but was demoted to a lower level. Arvin-Thornton was not offered a lesser position because of her carelessness, inattention to detail, and inability to learn the basic skills necessary for her job. Unable to find a lateral position within the company, Arvin-Thornton was discharged.
 
 
 8
 Arvin-Thornton filed a complaint with the EEOC and eventually commenced this action. After a bench trial on the merits, the district court found for Philip Morris. The district court found that Arvin-Thornton established a prima facie case of discrimination, that Philip Morris successfully articulated a non-discriminatory reason for the discharge, and that Arvin-Thornton failed to show that Philip Morris's proffered reason was merely a pretext. The district court denied Arvin-Thornton's motion for reconsideration. Arvin-Thornton moved, post-trial, for the district court judge to disqualify himself from hearing the case because he was an ordained Baptist minister and the case involved religious discrimination. The district court denied the motion. Arvin-Thornton appealed.
 
 I.
 
 9
 In a Title VII action a plaintiff must demonstrate a prima facie case of discrimination by a preponderance of evidence. Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 252-53 (1981); Moore v. City of Charlotte, 754 F.2d 1100, 1105 (4th Cir.), cert. denied, 472 U.S. 1021 (1985). The burden then shifts to the employer to show some legitimate, non-discriminatory reason for the adverse employment action. Burdine, 450 U.S. at 253. If the employer meets that burden, the burden shifts back to the plaintiff to prove by a preponderance of evidence that the employer's reasons are a mere pretext for discrimination. Id.
 
 
 10
 To establish a case of discriminatory discharge, a plaintiff must show that: (1) she was a member of a protected class; (2) she was qualified for her job and her job performance was satisfactory; (3) she was discharged; and (4) similarly qualified employees were retained. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). The district court properly determined that Arvin-Thornton established a prima facie case of discrimination. Arvin-Thornton, a member of the Yahweh Ben Yahweh religion, was qualified for her job and received satisfactory appraisals. Despite these qualifications and performance, Arvin-Thornton was discharged while Gail Yoss, who was similarly qualified and was not a member of the Yahweh Ben Yahweh religion, was retained. The burden then shifted to Philip Morris to articulate some legitimate non-discriminatory reason for discharging Arvin-Thornton. Burdine, 450 U.S. at 252-53.
 
 
 11
 Philip Morris presented evidence that several laboratory positions were eliminated through restructuring, that supervisors were directed to rank the technicians, that Arvin-Thornton ranked the lowest because of her inability to learn certain facets of the job, her inattention to detail, and her costly mistakes, and that she was, consequently, discharged. Based on this evidence, the district court properly found that Philip Morris articulated a legitimate non-discriminatory reason for terminating Arvin-Thornton. Id. The burden then shifted back to Arvin-Thornton to prove by a preponderance of the evidence that the reason offered by Philip Morris was merely a pretext for discrimination. Id. To establish pretext, Arvin-Thornton attempted to show that Philip Morris treated her less favorably than other employees because of her religion. International Bhd. of Teamsters v. United States, 431 U.S. 324, 335 n. 15 (1977). Arvin-Thornton claimed that the incident in which her supervisor asked her to remove the picture of her religious leader demonstrated that she was treated less favorably because of her religion. In support of this contention, Arvin-Thornton claimed that Gail Yoss displayed Bible sayings, with impunity. Arvin-Thornton's supervisors testified, however, that they were not aware of Yoss's display; Arvin-Thornton offered no evidence to the contrary.
 
 
 12
 Arvin-Thornton also claimed that Philip Morris treated her less favorably by allowing negative materials about her religion to be circulated and displayed in the work center. The materials were circulated and Arvin-Thornton's co-workers did harass her. However, these were the actions of co-workers, not part of a systematic effort by Philip Morris to discriminate against Arvin-Thornton.
 
 
 13
 Arvin-Thornton relied on Philip Morris's failure to give her the negative evaluation and their failure to turn it over to the EEOC as evidence of pretext. Philip Morris stated that the evaluation was never given to Arvin-Thornton because of the upcoming reorganization and was not turned over to the EEOC because it never became part of Arvin-Thornton's file. That was a legitimate explanation and Arvin-Thornton offered no evidence to rebut it.
 
 
 14
 Finally, Arvin-Thornton claimed that Philip Morris's failure to offer her a demotion, while offering one to Yoss, was evidence of pretext by Philip Morris. Philip Morris presented evidence, however, that Arvin-Thornton was not offered a demotion because, although not reflected in her performance appraisals, she was careless and inattentive to detail. Arvin-Thornton offered no evidence to rebut those assertions.
 
 
 15
 Therefore, although Arvin-Thornton established a prima facie case of discrimination, Philip Morris was able to show a legitimate nondiscriminatory reason for her discharge. Further, Arvin-Thornton was unable to show that Philip Morris's reason was just a pretext for discrimination. Consequently, the district court properly found for Philip Morris and properly denied Arvin-Thornton's motion for reconsideration.
 
 II.
 
 16
 Recusal is required where a judge's impartiality might reasonably be questioned. 28 U.S.C. Sec. 455 (1988). The test is whether a reasonable person, given the circumstances, would reasonably question the judge's impartiality; the inquiry is not whether the judge is actually impartial. In re Beard, 811 F.2d 818, 827 (4th Cir.1987). Arvin-Thornton's assertion that the district court judge was a Baptist minister was not enough to lead a reasonable person to question the judge's impartiality merely because this case involved religious discrimination. Arvin-Thornton offered no direct evidence of judicial bias. In fact, she relied on several of the district court judge's holdings to support some of her other arguments. Therefore, the district court judge did not err in denying Arvin-Thornton's motion for disqualification.
 
 
 17
 For the reasons set forth above, we affirm the district court's judgment.[2] We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court and argument would not aid the decisional process.
 
 AFFIRMED
 
 
 [1]
 When Arvin-Thornton filed a complaint with the Equal Employment Opportunity Commission ("EEOC"), Philip Morris gave a copy of Arvin-Thornton's personnel file to the EEOC. Philip Morris did not include the negative evaluation because it was never issued
 
 
 [2]
 Arvin-Thornton has filed several motions in this Court, including a motion for a hearing in banc. She filed a motion requesting that this Court initiate an investigation to determine if Philip Morris has secretly been poisoning her and her assistant. She filed a motion requesting additional information on the religious background of the district court judge. She filed a motion to supplement the record and then requested to withdraw the same motion. She filed a motion to supplement or amend her pleadings with additional claim of harassment and she has filed two motions to expedite her appeal. We deny Arvin-Thornton's motions for investigation and for information about the district court judge because these motions are without merit. We deny Arvin-Thornton's motion to supplement her pleadings since she did not raise the issue at trial and the power to grant such a motion lies with the district court. Fed.R.Civ.P. 15(b); see also National Union of Hosp. & Health Care Employees v. Carey, 557 F.2d 278, 282 (2d Cir.1977). Additionally, because the issues in this case are straightforward and relatively uncomplicated, we deny Arvin-Thornton's motion for a hearing in banc. We also deny Arvin-Thornton's motions to expedite as moot. Finally, we grant Arvin-Thornton's request to withdraw her motion to supplement the record